# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA   )
                               )
v.                                   )         Case No. 3:17–CR–66–HEH
                               )
ALEXIS GEOVANNI RUIZ-LOPEZ,  )
                               )
          Defendant.     )

## MEMORANDUM OPINION
### (Denying Defendant's Motion to Dismiss the Indictment)

On June 6, 2017, the Grand Jury indicted Alexis Geovanni Ruiz-Lopez ("Defendant") for illegally reentering the United States in violation of 8 U.S.C. § 1326(a). This matter comes before the Court on Defendant's Motion to Dismiss the Indictment (the "Motion," ECF No. 12), which collaterally attacks the October 27, 2004 removal order that was entered in Defendant's absence ("Removal Order"). Defendant maintains that the Removal Order was invalid and entered beyond the immigration judge's authority. Accordingly, Defendant asserts that the Removal Order cannot qualify as a deportation or removal under § 1326(a).

The parties submitted memoranda supporting their respective positions, and the Court heard oral argument on March 4, 2020. Notably, at that hearing, Defendant stipulated to all of the exhibits introduced by the Government. At the conclusion of the hearing, the Court indicated that it would deny Defendant's Motion.

Defendant is a citizen of Honduras. On August 16, 2004, United States Border Patrol arrested Defendant near Laredo, Texas, for entering the United States without

inspection or permission by a designated official. On that day, Defendant was processed, assigned an Alien Registration Number, and was offered a Stipulated Request for Order and Waiver of Hearing. After the document was read to him in Spanish, Defendant, under penalties of perjury, signed the request, waived a hearing before an immigration judge, waived representation by counsel, requested that removal be conducted solely by written record with admission of the stipulated order and without a hearing, admitted all of the allegations in the Form I-862 Notice to Appear, conceded that he was deportable/inadmissible as charged, understood that the consequences of the document was removal, agreed to a removal order, and waived any appeal from a written removal order.

That next day, while represented by counsel, Defendant pleaded guilty to illegal entry under 8 U.S.C. § 1325(a)(1) in the United States District Court for the Southern District of Texas, and was sentenced to probation for three years. He was then returned back to the custody of U.S. Border Patrol on August 18, 2004, and was served with form I-862, Notice to Appear ("NTA"). The NTA advised that the specific date and time of an immigration hearing would be scheduled at a later date. Notably, Defendant refused to provide a United States address. Defendant was then released pursuant to an Order of Release on Recognizance, which directed him to report to a specified U.S. Immigration office on September 20, 2004, at 9:00 AM. The Order, which was read to Defendant in Spanish and signed by him, specified that a failure to comply with that Order could result in revocation of his release without further notice.

Defendant failed to appear at the U.S. Immigration office on September 20, 2004,

2

and therefore, failed to get the date and time of his immigration hearing. On October 27, 2004, Defendant failed to appear for his immigration hearing. In Defendant's absence, the immigration judge ordered that Defendant be removed from the United States due to Defendant's failure to appear, failure to provide the court with an address, and the record presented to the court.

For nearly 10 years, Defendant remained a fugitive in the United States until January 9, 2014, when he was apprehended in Mississippi. Immigration officers determined that Defendant had a current order of deportation, and on January 31, 2014, Defendant was removed to Honduras with a 10-year bar from reentry into the United States. At this time, Defendant was served with form I-294, Warning to Alien Removed or Deported. Notably, Defendant did not challenge the underlying Removal Order, or otherwise challenge the removal proceedings. He also failed to exercise any right of judicial review of the Removal Order.

Defendant was then again arrested on January 17, 2015 in Harris County, Texas, for unlawful possession of a weapon. Two days later, U.S. Immigration officers served Defendant with form I-871, Notice of Intent/Decision to Reinstate Prior Order. While Defendant refused to sign the form, he did not check the box contesting the removal determination.

On March 3, 2015, Defendant pleaded guilty to the weapon charge in state court and was sentenced to 10 days of incarceration. Defendant was subsequently released to the custody of U.S. Immigration, and, on April 6, 2015, Defendant was removed to Honduras with a 20-year bar from reentry into the United States. He was served with

form I-294, Warning to Alien Removed or Deported. Once again, Defendant failed to challenge the underlying Removal Order, failed to otherwise challenge the removal proceedings, and failed to exercise any right of judicial review of the Removal Order.

Defendant was arrested for a third time near Laredo, Texas, on December 20, 2015, by U.S. Border Patrol for entering the United States without inspection or permission. He was again served with form I-871, Notice of Intent/Decision to Reinstate Prior Order. This time, Defendant signed the form and checked the box stating he did not want to make a statement contesting that determination. He also signed an I-215B Affidavit, swearing that he had previously been ordered removed from the United States three times, never applied for permission to reenter the United States after his removals, and had no fear of torture or persecution if he were to be removed. On December 22, 2015, Defendant was convicted of illegal entry under 8 U.S.C. § 1325(a)(1) in the United States District Court for the Southern District of Texas, and was sentenced to 30 days of confinement.

On January 29, 2016, after his prior order of removal was reinstated, Defendant was again removed to Honduras, with a 20-year bar from reentry into the United States, and served form I-294, Warning to Alien Removed or Deported. Once again, Defendant never challenged the underlying Removal Order, nor the removal proceedings, and failed to exercise any right of judicial review of the Removal Order.

Defendant was arrested for the fourth time in the United States by the Richmond, Virginia Police Department for public intoxication on April 24, 2017. He was then released on his own recognizance. Defendant was subsequently indicted in this Court on

4

June 6, 2017, for illegal reentry under 8 U.S.C. § 1326(a). On October 13, 2019, Defendant was arrested for driving while intoxicated, false identity to law enforcement, and identity theft. He was convicted on all three charges in Chesterfield General District Court on November 14, 2019. Four days later, Defendant was released to the custody of U.S. Immigration and served form I-871, Notice of Intent/Decision to Reinstate Prior Order. He was subsequently arraigned on the pending Indictment in this Court on November 26, 2019. Defendant's Motion to Dismiss followed.

"[I]llegal reentry under 8 U.S.C. § 1326(a) . . . is violated when an individual who previously was 'deported' or 'removed' from the country 'enters, attempts to enter, or is at any time found in, the United States' without legal authorization." *United States v. Cortez*, 930 F.3d 350, 354 (4th Cir. 2019). The Fourth Circuit has held that "a deportation order is an element of the offense of illegal reentry." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).

Subsection (d) of 8 U.S.C. § 1326 codifies a defendant's ability to collaterally attack a previous removal order if he can meet three requirements: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). In order to satisfy the third element, the Fourth Circuit has held that an alien "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *El Shami*, 434 F.3d at 664 (quoting *United States v.*

*Wilson*, 316 F.3d 506, 510 (4th Cir. 2003)).

The three requirements of § 1326(d) "are listed in the conjunctive, so a defendant must satisfy all three in order to prevail." *Id.* at 663 (quoting *Wilson*, 316 F.3d at 509). "[I]f the defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *Id.*; *see also United States v. Galcia*, No. 1:15cr59, 2016 WL 4054926, at *2 (E.D. Va. July 26, 2016) ("The burden of proof in a collateral attack upon a removal order rests with the defendant.").

Defendant asserts that the Removal Order, which was entered in his absence, was invalid because the NTA lacked a date and time, and thus the immigration judge lacked jurisdiction to enter the order. However, courts throughout this Circuit have held that such an argument is without merit. *See, e.g., United States v. Torres Zuniga*, 390 F. Supp. 3d 653, 659–64 (E.D. Va. 2019) (Payne, J.) ("[R]egulations, not the statutory provisions at issue in [*Pereira v. Sessions*, 138 S. Ct. 2105 (2018)], govern the vesting of jurisdiction in the immigration courts.").

Furthermore, while Defendant argues that the Fourth Circuit's recent decision in *Cortez* is not directly controlling, as it did not specifically deal with a defendant who had been removed *in absentia*, it is certainly—at a minimum—persuasive. 930 F.3d at 358 ("[W]e have significant doubts about [the defendant's] assumption that the 'jurisdictional' nature of his challenge to his administrative removal order puts him in a different and special category when it comes to judicial review, exempting him from § 1326(d)'s exhaustion requirements and other limits on collateral attacks. . . . [Even still], the purported defect [the defendant] has identified—the failure of the notice to

6

appear filed with the immigration court to include a date and time for his removal hearing—does not implicate the immigration court's adjudicatory authority or 'jurisdiction.'"); *see also United States v. Saravia-Chavez*, 793 F. App'x 196 (4th Cir. 2020) (mem.).

Accordingly, for these reasons, and for the reasons specifically articulated in Judge Payne's decision in *Torres Zuniga*, this Court finds that the immigration court's 2004 Removal Order was not void for lack of jurisdiction, despite the fact that the NTA lacked a date and time for the immigration court hearing, as he was ordered to appear at the immigration office on September 20, 2004, to receive this information. The Court notes that this determination is supported by the particular facts in this case, specifically that Defendant agreed that he could be released on his own recognizance, agreed that he would report to the immigration office on September 20, 2004 and failed to do so, failed to provide an address where he could be contacted, and then remained a fugitive in the United States for nearly 10 years.

Similar to the *Torres Zuniga* case, Defendant fails to argue why he satisfies the three required elements of § 1326(d), relying instead on his argument that the Removal Order is void and that the immigration court lacked jurisdiction. *See* 390 F. Supp. 3d at 664. Indeed, the Motion is conspicuously devoid of any reference to § 1326(d) or Defendant's burden under those statutory requirements. Furthermore, counsel for Defendant asserted at oral argument that the only contested issue in his Motion was whether the Removal Order was invalid. Having found that it was not, the Court further finds that Defendant has failed to establish his burden under § 1326(d) to collaterally

attack the validity of the 2004 Removal Order.

At oral argument, counsel for Defendant agreed that nothing in Defendant's Alien

File showed that he previously moved to reopen the proceedings or attempted to take

advantage of judicial review. Furthermore, there is no evidence that Defendant's due

process rights were violated, that the Removal Order was unfair, or that the outcome

would have been different had he appeared.

Accordingly, for these reasons and for the reasons stated at the March 4, 2020

hearing, Defendant's Motion will be denied. An appropriate Order will accompany this

Memorandum Opinion.

/s/
_____
Henry E. Hudson
Senior United States District Judge

Date: March 18, 2020
Richmond, Virginia